UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ATTICUS MANAGEMENT LLC,

                  Plaintiff,

   -against-

ATTICUS INVESTMENTS LLC,
CRESCENT FUND, LLC, JEFFERY STONE
and JANETTE DILLER STONE

                  Defendants.
-----------------------------------------------------------------X

Civil Action No. 07 CV 9730 (RPP)

## MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR ORDER AUTHORIZING ALTERNATE SERVICE OF SUMMONS AND COMPLAINT UPON DEFENDANT JEFFERY STONE

KAUFMAN BORGEEST & RYAN LLP
Attorneys for Plaintiff,
ATTICUS MANAGEMENT LLC
99 Park Avenue, 19th Floor
New York, New York 10016
Telephone No.: (212) 980-9600
KBR File No.: 125.001

Of Counsel:

    Jonathan B. Bruno

## PRELIMINARY STATEMENT

Plaintiff Atticus Management LLC respectfully submits this Memorandum of Law in Support of its Application for Order Authorizing Alternate Service of Summons and Complaint upon Defendant Jeffery Stone, together with the declarations of Jonathan B. Bruno, Francis X. Gray, and Catherine Harkness.

## PARTIES

Plaintiff is the successor in interest of Atticus Partners, L.P., the original owner and registrant of the mark "ATTICUS." Plaintiff, which is the general partner to Atticus Capital LP, is the owner of the registered U.S. Federal Trademark "ATTICUS," Registration Number 2,098,746, International Class ("IC") 036 for use in connection with financial services, namely investment fund management. Atticus Capital LP is a top New York based investment management firm with offices in London, England and over $18 billion under management as of September 30, 2007. The "ATTICUS" trademark registration received incontestability status on or about November 14, 2003. See paragraphs 4-6 of Plaintiff's Complaint, annexed to the Declaration of Jonathan B. Bruno (hereinafter "Bruno Decl.").

Jeffery Stone ("Stone") and Janette Diller Stone ("Diller"), who are husband and wife, are both officers of the Crescent Fund, LLC ("Crescent"), which upon information and belief, is a private equity consulting and promotional firm that purports to provide corporate capitalization and investor relations consulting services to both established and emerging companies. See Bruno Decl. Ex. B, ¶ 7. Atticus Investments LLC ("Atticus Investments") is purportedly the financing arm of Crescent. See Bruno Decl. Ex. B, ¶ 8. In unrelated litigation, Stone has admitted to being an officer of both Crescent and Atticus Investments and Diller Stone has

admitted to being President and CEO of both Crescent and Atticus Investments. See Bruno Decl. ¶ 2, Ex. A.

Defendants Stone and Diller Stone have been accused of illegal activity, including but not limited to securities fraud in violation of numerous provisions of federal securities laws. On September 21, 1999, Defendant Stone pleaded guilty to one count of conspiracy to commit wire fraud and commercial bribery in violation of 18 U.S.C. §371, and two counts of wire fraud in violation of 18 U.S.C. §§ 2, 1343 and 1346. See United States v. Jeffrey Stone, 97-Cr-01034 (JSM). On the basis of Defendant Stone's guilty plea, he was sentenced to three years imprisonment, followed by three years of supervised release, and ordered to pay a fine of $50,000. See Bruno Decl. Ex. B, ¶¶ 14-16.

Stone has been described in a U.S. Securities and Exchange Commission Litigation Release as a "recidivist securities law violator." See Bruno Decl. Ex. B, ¶ 17, Ex. A. On August 16, 2006, a complaint was filed by the Securities and Exchange Commission ("SEC") charging Defendants Stone, Diller Stone and Crescent with securities fraud. See SEC v. Jeffery Steven Stone; Janette Diller Stone; Crescent Fund, LLC. et al. Case No. 06-CV-6528 (S.D.N.Y. filed August 17, 2006) (hereinafter "SEC action"). See Bruno Decl. Ex. B, ¶¶ 18, 21. The SEC made multiple attempts over the course of months to serve Defendants Stone and Diller, which the Defendants evaded. Ultimately, the SEC made an application to this court for authority to use alternate means of service upon Stone and Diller, which the Honorable Harold Baer, Jr., granted on March 5, 2007. See Bruno Decl. Ex. F.

## BACKGROUND

On November 2, 2007, the Plaintiff filed this action to enforce its rights in its federally registered trademark "ATTICUS." See Bruno Decl. Ex. B. Plaintiff's complaint alleges, inter

alia, trademark infringement against defendants and contributory trademark infringement against Crescent fund, both in violation of Section 32(1) of the Lanham Act, 15 U.S.C. §1114(1) and Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), unfair competition in violation of federal law, common law unfair competition, and dilution under N.Y. Gen. Bus. Law §360-1. See Bruno Decl. Ex. B.

**Plaintiff's Attempts at Service**

Plaintiff served defendant Atticus Investments on November 29, 2007 and defendant Crescent on November 26, 2007, by way of the New York State, Department of State, Division of Corporations. Plaintiff personally served Janette Diller Stone on November 13, 2007. See Bruno Decl. ¶ 4, Ex. C. On November 20, 2007, attorney for Plaintiff, Jonathan Bruno, corresponded with Joseph Cooke, Esq, an attorney for Stone and Diller in an unrelated action, requesting him to accept service on their behalf but Mr. Cooke refused. See Bruno Decl. ¶ 5.

During the course of Plaintiff's initial investigation, it appeared that the Stones lived in Greenwich, Connecticut and worked in New York, New York. Plaintiff sent multiple cease and desist letters to defendants, to which they received two responses, one from the 67 Wall Street address and the other from 362 Davis Ave. in Greenwich, CT ("the Greenwich residence") Plaintiff retained, Francis X. Gray, a licensed and bonded private investigator, to serve Diller and Stone at the Greenwich residence or their Wall Street address. See Bruno Decl. ¶ 6; See Declaration of Francis X. Gray (hereinafter "Gray Decl.") ¶ 2.

When Mr. Gray's investigator tried the Greenwich residence, he encountered a man who identified himself as "Larry." See Gray Decl. ¶ 3. However, upon returning to the same address that same day, the agent was met by and served a woman who was believed to be Janette Diller Stone. Upon comparison with photographs of Diller which were subsequently obtained, Mr.

Gray's investigator was able to repeatedly confirm that the woman who was served on November 13, 2007 was in fact Diller. See Declaration of Catherine Harkness (hereinafter "Harkness Decl.") ¶¶ 4-6.

After further research aimed at contacting Stone at the Crescent Fund, Mr. Gray discovered that Stone and Diller's old address associated with Crescent, 67 Wall Street in New York, was subsequently moved to 110 Wall Street in New York. See Gray Decl. ¶ 6. Upon further investigation at the new address, the receptionist informed Mr. Gray that Stone came and went periodically to pick up his mail, and that he rented out a phone and received mail at this address. See Gray Decl. ¶ 6.

Mr. Gray subsequently set up daytime surveillance at 110 Wall Street, hoping to locate Stone while he entered or left the building as per the receptionist's indication. After several days without success, daytime surveillance was terminated. See Gray Decl. ¶ 8.

On February 14, 2008, Mr. Gray received the results of a search on the location of a yellow Hummer that had been seen parked outside the Greenwich address in a 2007 aerial photo of their residence. See Gray Decl. ¶ 10. The Hummer was indicated as having been shipped to Japan. See Gray Decl. ¶ 10. Looking to exhaust any possible leads on Stone that could arise through information previously gathered on Diller, Mr. Gray followed up with the only known association he had for the defendants in Japan, the Wakabayashi Fund (which was a company that turned up in the results of Mr. Gray's background check on Diller). See Gray Decl. ¶¶ 1, 11. When Mr. Gray called a number listed for the company, a man picked up identifying himself as Jeffery Stone. See Gray Decl. ¶ 12. When Mr. Gray told him he had some mail for Mr. Stone and was not sure whether to send it to his Connecticut, New York, or Japan address, Stone

instructed him to send all mail to 110 Wall Street and indicated that he would retrieve that mail. See Gray Decl. ¶ 12.

During this same time frame, Mr. Gray also contacted two other plaintiff's attorneys in unrelated cases in which Stone and Diller were named as defendants. Both attorneys either could not locate or had great difficulty locating Stone and Diller to serve process on them. See Gray Decl. ¶ 13. After confirming that Stone was in fact in Japan, Mr. Gray reached out to Diller and Stone's attorney in the SEC action, Steven Kaplan, Esq. of Rosenfeld & Kaplan, LLP, who upon previous attempts to contact him had been non responsive, but now indicated that he still represents Stone and Diller in the pending SEC action. Mr. Kaplan expressed that he would not accept service on their behalf. See Gray Decl. ¶ 13. When asked how he communicated with Stone, Mr. Kaplan informed Mr. Gray that his sole means of communication with Stone is via email. When pointedly asked if Stone is in Japan, Mr. Kaplan confirmed that fact but would not speak further regarding Stone. See Gray Decl. ¶ 13.

On February 19, 2008, a cease and desist letter which was sent to Stone's Greenwich address was returned to Plaintiff's counsel with a label that indicated that the time to forward mail had expired and lists the name and address, "Stone, 262 Kamiosaki Shinagawa ky, Tokyo Japan 141 0021."[1] See Bruno Decl. Ex. E. Thus, it appears that this is Stone's forwarding address for mail sent to the Greenwich residence and presumably for mail sent to 110 Wall Street, as Stone implied in his conversation with Mr. Gray. See Gray Decl. ¶ 12.

We understand that in the SEC action, the Commission's attempts to serve Diller and Stone in Japan by way of a request to the Japanese Ministry of Foreign Affairs, have been unsuccessful, as they proven adept at evading service internationally as well. Thus, we

---

[1] While the return label lists the address as "262 Kamiosaki Shinagawa ky," our investigation, as well as the website for the Wakabayashi Fund, lists the address as "262 Kamiosaki Shinagawa ku." Thus, for the purposes of requesting authorization for alternate service in Japan, we will use the latter address.

690198                                              6

respectfully submit that Plaintiff in the instant action has made more than reasonable efforts to locate and serve the defendant Stone, and request that the Court grant our application for an order authorizing service upon defendant Stone by the alternate means of either: 1) emailing a scanned copy of the summons and complaint to crescentfund@crescentfund.com and to wakabayashi@wakabayashifund.com; 2) personally serving the summons and complaint upon Steven Kaplan, Esq. of Rosenfeld & Kaplan, LLP; 3) sending a copy of the summons and complaint by certified mail to Crescent Fund's at 110 Wall Street, New York, New York 10005; or 4) sending a copy of the summons and complaint by regular mail to 262 Kamiosaki Shinagawa ku, Tokyo, Japan 141 0021.

## ARGUMENT

Under Rule 4(f) of the Federal Rules of Civil Procedure, service on individuals in a foreign country may be effected by methods available under the Hague Convention or, under rule 4(f)(3), "by other means not prohibited by international agreement as directed by the court." Plaintiff may seek court ordered alternative service under Rule 4(f)(3) without first resorting to other means of service. See Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1015 (9th Cir. 2002) (expressly rejecting the argument that Rule 4 creates a "hierarchy of preferred methods of service of process" that first requires failed service under each of the Rule 4(f)(2) options before resorting to court-ordered service).

The Supreme Court has set forth that service must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315-17 (1950). Because the fundamental requisite of due process law is the opportunity to

be heard, courts consider a defendant's conscious decision to ignore an action in determining whether alternative service is reasonable. See SEC v. Tome, 833 F.2d 1086, 1094.

The basic facts previously set forth, specifically that Janette Diller Stone is Jeffery Stone's wife, that she was personally served with a summons and complaint, and that both parties have been involved in litigation prior to the instant action and are well aware of the requirement that they respond in order to avoid default, weigh heavily in favor of the conclusion that Stone has knowledge that a lawsuit has been commenced against him. Plaintiff is cognizant of the SEC's thorough yet unsuccessful attempts to serve Diller and Stone in Japan in light of the defendants' evasiveness and thus submits that attempting to serve Stone in Japan through the Japanese Ministry of Foreign Affairs will likely be futile and a burdensome expenditure of time and resources for Plaintiff. See Ryan v. Brunswick Corp., 2002 WL 1628933 at *2 (W.D.N.Y. 2002) (requiring parties seeking relief under FRCP 4(f)(3) to show that they have reasonably attempted to effectuate service on the defendant(s) and that the circumstances are such that the district court's intervention is necessary to obviate the need to undertake methods of service that are unduly burdensome or that are untried but likely futile.). Thus, under these circumstances, this Court should exercise its power under Rule 4(f)(3) to authorize an alternative method of service of process.

Courts have authorized various alternative methods of service where a foreign defendant cannot be served via traditional means. See Rio Props., 284 F.3d at 1016 (granting alternative service on local affiliate, on American attorney consulted by defendant, and by email); see also United States v. Padilla, 2002 WL 471838, at *1 (E.D.Cal. 2002) (authorizing United States to serve defendant by personally delivering a copy of summons and complaint to both defendant's daughter and defendant's attorney, currently representing defendant in another matter, with letter

690198

8

requesting that recipients forward the summons and complaint to defendant, and offering to send copies directly to defendant's residence if the recipient provides the government with defendant's address); Martinez v. White, 2006 WL 2792874, at *3 (N.D.Cal. 2006) (authorizing service on a defendant's attorney even where attorney is not authorized to accept service).

Plaintiff proposes that it be allowed to serve defendant Stone by either: 1) emailing a scanned copy of the summons and complaint to the general crescent fund email address and to the general email address listed for the Wakabayashi Fund; 2) personally serving the summons and complaint to Stones' attorney in the SEC action, Steven Kaplan, Esq. of Rosenfeld & Kaplan, LLP; 3) sending a copy of the summons and complaint by certified mail to Crescent Fund's new address at 110 Wall Street, New York, New York 10005; or 4) sending a copy of the summons and complaint by regular mail to 262 Kamiosaki Shinagawa ku, Tokyo, Japan 141 0021, the address in Japan listed on the return to sender label of our cease and desist letter to Stone's Greenwich residence.

Service by email to crescentfund@crescentfund.com is appropriate because Stone is admittedly associated with the Crescent Fund. Stone and the other three co-defendants in this action, are involved in an unrelated action, referred to in Plaintiff's Complaint as the Laidlaw action. In the defendants' Verified Answer to the Laidlaw Complaint, Stone admits to being an officer of Crescent Fund, LLC. See Bruno Decl. ¶ 2, Ex. A. Moreover, Plaintiff's investigator confirmed that the URL "www.crescentfund.com" is associated with Stone and was designed by a web designer whose website, "www.tylerknows.com," is registered to Janette Diller's son William Tyler Diller. See Gray Decl. ¶ 1. Moreover, Crescent Fund is associated with the address 110 Wall Street, the same address Stone instructed Mr. Gray to send all of Stone's mail. See Gray Decl. ¶ 12. Service by email to wakabayashi@wakabayashifund.com is also

appropriate as the phone number for the Wakabayashi Fund was answered by Jeffery Stone himself. See Gray Decl. ¶ 12. Service by email is only further confirmed to be reasonably calculated to inform Stone of the litigation in light of Mr. Kaplan's indication that his only means of communication with Stone is by email. See Gray Decl. ¶ 13. See Rio Props., 284 F.3d at 1018 ("when faced with an international e-business scofflaw, playing hide and seek with the federal court, email may be the only means of effecting service of process").

Service on Stone's attorney in the SEC action, Steve Kaplan, Esq. of Rosenfeld & Kaplan, LLP, is appropriate because Mr. Kaplan is an attorney for an action that is still pending in the Southern District of New York. See Gray Decl. ¶ 13. Although Mr. Kaplan may not be Stone's attorney in the instant matter, he need not be authorized to accept service on Stone's behalf to be allowed to receive service under Rule 4(f)(3). See Rio Props., 284 F.3d at 1017; Martinez, 2006 WL 2792874, at *3; Forum Fin. Group v. President and Fellows of Harvard College, 199 F.R.D. 22, 23-24 (D. Me. 2001). Since Mr. Gray already contacted Mr. Kaplan, who acknowledged that he represents the Stones in the SEC action, service on him meets the standard of being reasonably calculated to inform Stone (with whom he has contact) of this action.

Service by certified mail to 110 Wall Street, New York, New York, is appropriate because Stone continues to indicate that this is the address to which all mail directed to him should be sent. See Gray Decl. ¶ 12.

Finally, service by mail to Stone's Japan address is proper because the Second Circuit has held that mail service is permitted to non-objecting nations who are signatories to the Hague Convention. See Ackerman v. Levine, 788 F.2d 830, 839 (2d Cir. 1986) ("Federal courts construing the Hague Convention have apparently consistently upheld mail service there under to

690198                                  10

defendants in, for example, Japan, which like the United States, is a signatory to the Convention and has not objected to mail service under Article 10(a)."), citing Sieger v. Zisman, 106 F.R.D. 194 (N.D.Ill.1985); Weight v. Kawasaki Heavy Industries, 597 F. Supp. 1082, 1085-86 (E.D.Va.1984); Chrysler v. General Motors, 589 F. Supp. 1182, 1206 (D.D.C. 1984).

## CONCLUSION

Each of the aforementioned methods is individually "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314. In the interest of diligence and thoroughness, Plaintiff has proposed all of the aforementioned alternatives to adequately ensure that Stone receives notice of the instant lawsuit and is apprised of his need to litigate it. Thus it is respectfully requested that the Court grant Plaintiff's application for an order authorizing alternate service on defendant Jeffery Stone.

Dated: March 3, 2008

                Respectfully Submitted,

                KAUFMAN BORGEEST & RYAN LLP

                By: Jonathan B. Bruno
                Attorney for Plaintiff,
                ATTICUS MANAGEMENT LLC
                99 Park Avenue, 19th Floor
                New York, New York 10016
                (212) 980-9600
                File No.: 125.001